IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDISON S. DICION, | CIV. NO. 13-00533 JMS-KSC |
| Plaintiff, | ORDER DISMISSING COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION |
| vs. | |
| MANN MORTGAGE, LLC; BANKERS TRUST COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, L.P.; NATIONSTAR MORTGAGE LLC; FEDERAL NATIONAL MORTGAGE ASSOCIATION; CORELOGIC DEFAULT INFORMATION SERVICES; MARTHA MUNOZ; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; DOE GOVERNMENTAL UNITS 1-10, | |
| Defendants. | |

**ORDER DISMISSING COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

**I. INTRODUCTION**

On October 15, 2009, Plaintiff Edison S. Dicion ("Plaintiff") filed this action in connection with a promissory note and mortgage on real property located

at 67-160 Kuoha Street, Waialua, Hawaii (the "subject property"). Plaintiff seeks a declaration from this court "identifying the true mortgagee so that he does not face double or triple liability for his debt." Doc. No. 1, Compl. ¶ 1. Plaintiff names as Defendants: Mann Mortgage, LLC ("Mann"); Bankers Trust Company ("BTC"); Mortgage Electronic Registration Systems, Inc. ("MERS"); Bank of America, N.A. ("BANA"); BAC Home Loans Servicing, L.P. ("BAC"); Nationstar Mortgage LLC ("Nationstar"); Federal National Mortgage Association ("Fannie Mae"); Corelogic Default Information Services ("Corelogic"); and Martha Munoz ("Munoz") (collectively, "Defendants").

Currently before the court is Defendants BANA and Munoz' Motion to Dismiss, to which the remaining Defendants joined. The court determines that Plaintiff lacks standing and that the amount in controversy is not sufficient to invoke diversity jurisdiction. Accordingly, the Complaint is DISMISSED for lack of subject matter jurisdiction.

## II. BACKGROUND

### A. Factual Background

As alleged in the Complaint, on May 15, 2009, Plaintiff obtained a loan for $230,500 from Mann, secured by the subject property, as evidenced in a mortgage executed that same day. Doc. No. 1, Compl. ¶ 17; Doc. Nos. 1-1, 1-2,

Exs. A, B. Both the note and mortgage identify Mann as the Lender. *Id.* In addition, the mortgage identifies MERS as "a separate corporation that is acting soley as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." Doc. No. 1-2, Ex. B ¶ C. The note provides that "the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Doc. No. 1-1, Ex. A ¶ 1.

The mortgage provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Doc No. 1-2, Ex. B ¶ 20. In addition, the mortgage defines the role of the Loan Servicer -- an "entity . . . that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law" -- and provides that "[i]f there is a change of the Loan Servicer, Borrower will be given written notice of the changes which will state the name and address of the new Loan Servicer [and] the address to which payments should be made[.]" *Id.*

On February 24, 2012, Munoz executed an Assignment of Mortgage on behalf of MERS, as nominee for Mann, to BANA, which was recorded in the

State of Hawaii Bureau of Conveyances on April 13, 2012. Doc. No. 1-3, Ex. C. The Complaint alleges that this assignment, "drafted and recorded" by Corelogic, was "false and deceptive" because MERS "never owned the Note." Doc. No. 1, Compl. ¶ 19. The Complaint further alleges that Munoz, who "signed the false and deceptive Assignment," was not the "Vice President of MERS," as indicated on the Assignment, but is "actually an employee of [BANA]." *Id.* ¶¶ 20-21.

On May 9, 2013, Nationstar allegedly sent Plaintiff an email message claiming that it "owns the servicing rights to [Plaintiff's] Mortgage." *Id.* ¶ 24; *see* Doc. No. 1-5, Ex. E. On October 7, 2013, Plaintiff allegedly searched MERS' ServicerID website which indicated that his note is owned by Fannie Mae. Doc. No. 1, Compl. ¶ 22; *see* Doc. No. 1-4, Ex. D (providing a "MIN" number for Plaintiff's loan, specifying "MIN Status: Inactive," and identifying BANA as the loan "Servicer" and Fannie Mae as the loan "Investor"). Fannie Mae allegedly has not provided any documentation to this effect to Plaintiff, has not responded to Plaintiff's correspondence, and has not recorded any document in connection with the subject property. Doc. No. 1, Compl. ¶ 23.

The Complaint alleges that "[Plaintiff] has [both] a legal duty to pay his mortgage to the correct party[, and] the right to negotiate with the owner of his mortgage to obtain a modification." *Id.* ¶ 31. The Complaint further alleges that

4

"absent a declaration by this Court" determining the true mortgagee, Plaintiff "will be liable to double or triple liability for his mortgage debt." *Id.*

The Complaint asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332, alleging that all "Defendants are diverse from Plaintiff, and the amount in controversy is $484,000.00, which is the fair market value of the Subject Property." *Id.* ¶ 12.

**B.    Procedural Background**

On October 15, 2012, Plaintiff filed his Complaint, styled as a declaratory action, alleging one Count for quiet title to "clarify the legal relations between the parties." *Id.* ¶ 33. On January 21, 2014, Corelogic was dismissed from this action by stipulation. Doc. No. 31.

On January 10, 2014, BANA (for itself and as successor to BAC) and Munoz filed their Motion to Dismiss Complaint, Doc. No. 18. Mann, MERS, Nationstar, and Fannie Mae filed joinders. Doc. Nos. 25, 30. On February 17, 2014, Plaintiff filed a Memorandum in Opposition, Doc. No. 34, and on February 24, 2014, Replies were filed. Doc. Nos. 35, 36. On March 6, 2014, and pursuant to Local Rule 7.8, MERS, Nationstar, and Fannie Mae provided notice of reliance on uncited authority -- *Pascua v. Option One Mortgage Corp.*, 2014 WL 806226 (D. Haw. Feb. 28, 2014) -- which dismissed a similar complaint for lack of subject

matter jurisdiction and was issued after the briefing on the instant Motion had closed. Doc. No. 38. A hearing on the Motion to Dismiss was held on March 10, 2014, during which the court focused on the jurisdictional issues of standing and amount in controversy, and granted Plaintiff leave to file a Supplemental Response to *Pascua* addressing both of these jurisdictional issues. On March 17, 2014, Plaintiff filed his Supplemental Response. Doc. No. 40.

### III. STANDARDS OF REVIEW

**A. Article III Standing**

Article III of the United States Constitution limits jurisdiction of federal courts to cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish Article III standing, the complaint "must show [that] (1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lopez v. Candaele*, 630 F.3d 775, 789 (9th Cir. 2010) (explaining that an injury-in-fact sufficient to establish standing requires "a threat of specific future harm" that is not too attenuated or remote); *Whitmore v.*

*Arkansas*, 495 U.S. 149, 158 (1990) (collecting cases that demonstrate "what we have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact.") (citations and quotation marks omitted).

"A plaintiff has the burden of establishing the elements required for standing." *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996). As an indispensable part of the plaintiff's case, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). However, a plaintiff may not rely on a "bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of

the complaint. The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).

**B.     Amount in Controversy Required to Establish Diversity Jurisdiction**

If a Plaintiff can establish Article III standing, federal courts have "subject matter jurisdiction over [actions] . . . when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001); *see* 28 U.S.C. §§ 1331, 1332. And where declaratory or injunctive relief is sought, it is "'well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). The object of the litigation is "the value of the right to be protected or the extent of the injury to be prevented." *Jackson v. Am. Bar. Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976); *see also Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (stating that the "required amount [in controversy is] the value of the particular and limited thing sought to be accomplished by the action").

## IV. **DISCUSSION**

Although Defendants filed the instant Motion pursuant to Rule 12(b)(6), the court must first determine whether it has subject matter jurisdiction and does so sua sponte. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."); *see also Atalig v. United States*, ___ Fed. Appx. ___, 2014 WL 709561, at *1 (9th Cir. Feb. 25, 2014) ("A federal court has an obligation to assure itself of jurisdiction before proceeding to the merits by, in addition to other things, inquiring into whether the plaintiff has standing to sue under Article III of the Constitution."); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) ("[A] court may [address] subject matter jurisdiction, sua sponte[.]").

### A. **Plaintiff Lacks Standing**

The Complaint asserts a claim for quiet title, styled as a declaratory action, to identify "the true mortgagee" of Plaintiff's loan. Doc. No. 1, Compl. ¶ 1. The Complaint alleges that at various points in time, each of the Defendants has "claimed to be the mortgagee or [has] acted as the mortgagee" of Plaintiff's loan. *Id.* The Complaint suggests that Plaintiff has not paid off the amount due under the note and mortgage, and asserts that Plaintiff "has a legal duty to pay his mortgage to the correct party." *Id.* ¶ 31. Thus, Plaintiff filed suit to avoid the

9

possibility of facing "double or triple liability for his debt" if he pays the wrong party. *Id.*[1] The Complaint seeks a declaration of "the interest (if any) of the Defendants and the Petitioner [sic] in the Subject Property and in the Mortgage therein;" the removal of "all clouds on the title of the Subject Property[;]" and a "[s]tay of any and all legal proceedings *in rem* against the Subject Property until this Court can determine the status of" said title. *Id.* at 10.

Neither the Complaint nor Plaintiff's counsel alleges, however, that Plaintiff's loan is in default; that any Defendant, let alone multiple Defendants, has demanded payment from Plaintiff; or that any Defendant has initiated foreclosure proceedings against the subject property. *See* Doc. No. 41-2, Tr. at 7 (confirming during the hearing that "[n]o one at present" is asking him to pay his mortgage twice, but that "if [he] paid the wrong party that would be the inevitable result"). Absent such factual allegations, the potential for multiple liability or foreclosure is no more than mere speculation and falls far short of constituting an Article III injury-in-fact. *See Friends of the Earth, Inc.*, 528 U.S. at 167 (requiring a showing of an injury that is "actual or imminent, not conjectural or hypothetical" to establish Article III standing); *see also Lopez*, 630 F.3d at 789 (explaining that

---

[1] During the hearing, when asked why Plaintiff filed this action, Plaintiff's counsel responded that Plaintiff has "a right to know to whom [he] should pay the mortgage[, and is] not trying to get out of any obligation[.]" Doc. No. 41-2, Tr. at 5.

10

Article III standing requires "a threat of specific future harm" that is not too attenuated or remote). Thus, Plaintiff's injury is no more than his own uncertainty regarding which Defendant is entitled to his mortgage payments.[2] Such a subjective uncertainty is neither sufficiently concrete nor particularized to constitute an injury-in-fact. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148-51 (2013) (determining that plaintiffs' subjective fear of possible injury -- government interception of private communications between plaintiffs and foreign contacts suspected of terrorism -- was too speculative to confer Article III standing for their challenge to the law authorizing such government surveillance because realization of the harm alleged was dependent on a variety of events and actions that might never come to pass); *see also Friends of the Earth, Inc.*, 528 U.S. at 184 (stating that "subjective apprehensions that [a particular event] would [transpire] are not enough to support standing") (internal quotation marks omitted); *see, e.g., Williams v. Governor of Pa.*, 2014 WL 44034, at *3 (3d Cir. Jan. 7, 2014)

---

[2] Plaintiff cannot establish an injury-in-fact based on the Complaint's prayer for removal of "clouds on the title of the Subject Property," Doc. No. 1, Compl. at 10, because the implied assertion that such clouds exist is merely an erroneous legal conclusion. *See Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253, 1261 n.4 (D. Haw. 2012) (citing *Homeyer v. Bank of Am.*, 2012 WL 4105132, at *6 (D. Idaho Aug. 27, 2012) (rejecting quiet title claim because "the fact that the [note holder's identity] is unknown is not a cloud on the title") (Findings and Recommendation adopted Sept. 17, 2012)); *see also id.* at 1262 ("[R]outine loan servicing by itself does not constitute a cloud on title.") (collecting cases); *Maya*, 658 F.3d at 1068 (stating that at the pleading stage, the plaintiff may not rely on a "bare legal conclusion to assert injury-in-fact").

(explaining that potential future injury to city council members that would occur only if various contingencies occurred, including the council's failure to comply with a state court order, was too speculative to establish Article III standing).

Furthermore, in the absence of a demand for payment from multiple Defendants, Plaintiff's uncertainty is not "fairly traceable to [any] challenged action of the [D]efendant[s]." *Id.* at 180. Nor is Plaintiff's uncertainty "likely" to be "redressed by a favorable decision." *Id.* at 181. Despite Plaintiff's claimed uncertainty regarding the identity of the "true mortgagee," Defendants agree that BANA is the current mortgagee, Nationstar is the loan servicer, MERS does not claim to have assigned the mortgage to Fannie Mae, and Fannie Mae does not claim to be the mortgagee. *See* Doc. No. 41-2, Tr. at 6, 9-10; *see also* Doc. Nos. 1-1 - 1-3, 1-5, Exs. A-C, E.

The court's conclusions are consistent with *Pascua v. Option One Mortgage Corp.*, 2014 WL 806226 (D. Haw. Feb. 28, 2014).[3] In that case, Judge Susan Oki Mollway recently determined that a plaintiff lacked Article III standing based on nearly identical facts. The plaintiff in *Pascua* also asserted a claim for quiet title, styled as a declaratory action, in which he sought a ruling "declar[ing] which of the defendants, if any, is the owner of [his] Mortgage." 2014 WL

---

[3] Plaintiffs in both the instant action and *Pascua* were represented by the same counsel.

806226, at *3 (quoting the Complaint ¶ 1).[4] *Pascua* noted that although the plaintiff claimed "to be confused as to which party to pay," the defendants apparently agreed as to which entity owned the debt and which entity serviced the debt on behalf of the owner. *Id.* n.2. Thus, *Pascua* determined that:

> At most, the injury-in-fact that Pascua suffers is the "uncertainty" he says he has regarding what entity he is supposed to pay. It is not clear that this subjective feeling of uncertainty is sufficiently concrete and particularized to constitute an injury-in-fact. It is also not clear that [the plaintiff's] purported injury, such as it is, is caused by Defendants' conduct rather than by [the plaintiff's] own apparent inability to discern the nature of his obligations.

*Id.* at *4 (internal citations omitted). Moreover, because "only one party claim[ed] to be the owner of [the] debt, the possibility of double payment [was] not 'certainly impending.'" *Id.* at *3.[5]

Plaintiff's attempts to distinguish *Pascua* utterly fail. First, Plaintiff contends that he is "not merely seeking relief from the uncertainty as to whom he

---

[4] The plaintiff had obtained a home mortgage from one entity, which later sold and assigned the mortgage to another bank. *Pascua*, 2014 WL 806226, at *1. The new owner hired a third entity to service the loan. *Id.* Sometime thereafter, the plaintiff defaulted on the loan and was directed by the note holder to remit $41,139.92 to the loan servicer in order to avoid foreclosure. *Id.* Several months later, the loan servicer sent a letter indicating that it was transferring the servicing of the plaintiff's loan to a fourth entity. *Id.* at *2.

[5] During the hearing, Plaintiff's counsel refused an offer to have Defendants sign a joint declaration saying what they represent -- that BANA is the sole mortgagee.

13

owes a debt, he is disputing each Defendants' purported interest in the Subject Property." Doc. No. 41, Pl.'s Suppl. Resp. at 6. Plaintiff's distinction is illusory. The *exact* same declaratory relief that Plaintiff now seeks was also sought in *Pascua*. *See* 2014 WL 806226, at *3 (stating that the plaintiff sought a "declaratory judgment . . . declaring . . . the interest (if any) of the Defendants and the Plaintiff in the Subject Property and in the Mortgage"). Moreover, the defendants' purported interests in the subject property were also disputed in *Pascua*. *See id.* at *1-2 (setting forth the plaintiff's (1) allegations that the assignment of mortgage was improper; and (2) extended correspondence with the loan servicer challenging the rights and interests of the purported owner and loan servicer).

Second, Plaintiff contends that unlike *Pascua*, "multiple parties claim to be the Note holder, and multiple parties claim to be the mortgage servicer." Doc. No. 41, Pl.'s Suppl. Resp. at 7. Again, Plaintiff is mistaken. As set forth above, neither the documents attached to the Complaint, nor representations made in court, support Plaintiff's conclusory allegation that *Defendants* claim conflicting interests in the loan documents and subject property. Rather, Plaintiff appears to have made up a dispute without supporting facts.

Based on the foregoing, the court finds that Plaintiff lacks Article III standing.

**B.    The Amount in Controversy Is Insufficient to Invoke Diversity Jurisdiction**

Alternatively, even if Plaintiff had Article III standing, the amount in controversy is not sufficient to invoke diversity jurisdiction. Plaintiff contends that the amount in controversy should be the value of the subject property because he seeks "declaratory relief . . . as to the ownership of the Subject Property." Doc. No. 41, Suppl. Resp. at 6. Thus, Plaintiff argues that the object of the litigation is the subject property. *Id.* The court disagrees. As explained above, Plaintiff filed this action to determine "the true mortgagee" so as to avoid the possibility of facing "double or triple liability for his debt" if he pays the wrong party. Doc. No. 1, Compl. ¶¶ 1, 31. The object of the litigation, therefore, is to relieve Plaintiff of his uncertainty as to which Defendant he should remit his future mortgage payments.[6]

---

[6] And because the true purpose of this action is neither to quiet title in favor of Plaintiff and against all Defendants, nor to stop an imminent foreclosure sale, simply requesting such relief cannot transform the object of litigation to the subject property. *See generally Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011) (stating that generally, the object of litigation in actions to quiet title or enjoin a foreclosure sale is the subject property) (citing *Woodside v. Ciceroni*, 93 F. 1, 4 (9th Cir. 1899) (regarding claim to quiet title) and *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973) (regarding claim to enjoin foreclosure sale)); *see also Martinez v. BAC Home Loans Servs., LP*, 777 F. Supp. 2d 1039, 1047-48 (W.D. Tex. 2010) ("[R]egardless of whether the property at issue has been sold in

(continued...)

Assigning an exact value to Plaintiff's relief from such uncertainty would be difficult. *See Jackson*, 538 F.2d at 831 (noting the difficulty of measuring the monetary value of something that is "intangible[ and] speculative"). Nevertheless, because Plaintiff is not in default, Defendants agree that Nationstar is the current loan servicer to which Plaintiff's mortgage payments are due, and no Defendant has demanded duplicate payment of any amount, that value cannot plausibly exceed $75,000. *See also Pascua*, 2014 WL 806226, at *5 (finding that the subjective value to the plaintiff of freeing him from the fear that he might pay double the amount requested ($41,139.92) to avoid foreclosure should he pay the wrong party could not plausibly exceed $75,000).

## V. **CONCLUSION**

Based on the foregoing, the court finds that Plaintiff lacks Article III standing and that the amount in controversy is not sufficient to invoke diversity

///

///

///

---

[6](...continued)
foreclosure or is still held by the lender, the value of the property is the object of the litigation for the purposes of determining whether the amount-in-controversy requirement has been met *so long as the plaintiff is seeking injunctive relief to prevent or undo the lender's sale of the property.*") (emphasis added).

jurisdiction. Accordingly, the Complaint is DISMISSED for lack of subject matter jurisdiction. The Clerk of Court is directed to close the case file.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, April 4, 2014.



    /s/ J. Michael Seabright
    J. Michael Seabright
    United States District Judge

*Dicion v. Mann Mortg., LLC, et al.*, Civ No. 13-00533 JMS-KSC, Order Dismissing Complaint for Lack of Subject Matter Jurisdiction